CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
for Lynchburg
APR 17 2009
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| SCHWARZ & SCHWARZ OF VIRGINIA, L.L.C., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SCHWARZ & SCHWARZ, L.L.C., | ) | Civil Action No. 6:07cv00042 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON WHO SUBSCRIBED TO POLICY NUMBER NC959 | ) ) ) | |
| | ) By: | Michael F. Urbanski |
| Defendant. | ) | United States Magistrate Judge |

### MEMORANDUM OPINION

This matter is before the court on plaintiffs' Schwarz & Schwarz of Virginia's and

Schwarz & Schwarz, L.L.C.'s ("Schwarz") motion to compel the production of documents (Dkt.

No. 21). The issues have been briefed and the court has heard argument, making the matters ripe

for decision. For the reasons stated below, the court finds that plaintiffs' motion must be

**GRANTED** in part and **DENIED** in part.

### I. Background

This suit concerns the propriety of defendant Certain Underwriters at Lloyd's ("Lloyd's")

denial of plaintiff Schwarz's insurance claim for a November 11, 2005 fire that occurred on

Schwarz's property in Alta Vista, Virginia. Lloyd's disclaimed coverage via a letter dated

October 2, 2007, and Schwarz filed this action on October 19, 2007.[1]  Though Lloyd's asserts

that its denial of coverage is based upon multiple grounds,[2] the substantive dispute between the

parties appears to center on whether the fact that Schwarz's sprinkler system was not operational

on the date of the fire invalidated coverage under the insurance policy's Protective Safeguards

Endorsement.

On February 27, 2009, Schwarz moved for an order pursuant to Fed. R. Civ. P. 37

requiring Lloyd's and its counsel Wright & O'Donnell, P.C. to provide "full and complete

responses" to (1) Schwarz's request for production of documents to Lloyd's, and (2) Schwarz's

subpoenas to Gresham & Associates ("Gresham"), Crawford & Co. ("Crawford"), Denis M.

Clayton's & Co. ("Clayton's"), and Rimkus Consulting Group, Inc. ("Rimkus"), including but

not limited to the documents identified on defendant's combined privilege log.[3]  Though Lloyd's

---

[1] Schwarz seeks a declaratory judgment that the fire is covered by its insurance policy with Lloyd's. (See Complaint, ¶¶ 22-29, Dkt. No. 1).  In addition, Schwarz alleges that Lloyd's breached the insurance contract, as well Lloyd's bad faith in denying coverage. (Id., ¶¶ 30-44).

[2] Lloyd's asserts that its denial is based upon "the terms, provisions, conditions and exclusions in the Policy relating to the description, use, occupancy and value of the property, as well as the sprinkler system." (Mar. 16, 2009 Opp. Br. at 5-6 n. 2 (quoting Ex. C, Jan. 12, 2006 Reservation of Rights letter), Dkt. No. 26).

[3] Wright & O'Donnell, P.C. apparently also represents all of these other entities.  According to Lloyd's, the relationship between these entities is as follows:

> [Clayton's] is the London broker and authorized agent for Defendant. [Gresham] is the cover holder in the United States for the Policy at issue. [Crawford] is the adjustment company retained to adjust and investigate this loss on behalf of Defendant.. [Rimkus] is the expert retained by [Lloyd's].  Timothy McGreal of [Rimkus] will testify at [t]rial on behalf of Defendant.
> . . .
> Defendant communicates directly with Clayton's and counsel.  On behalf of Defendant, Clayton's communicates with Gresham, counsel, and at times Crawford as well.  Gresham communicates directly with Crawford, counsel, and at times Plaintiffs' broker, The Cranford Agency.  Crawford communicates with counsel, Gresham, and Clayton's.

(Mar. 16, 2009 Opp. Br. at 2).

2

did not deny Schwarz's claim until almost two years after the fire, it has withheld a number of these requested documents based upon work product protection, which Lloyd's claims attached on December 5, 2007 when it concluded that the Alta Vista property's sprinkler system was inoperable at the time of the fire. Lloyd's has also withheld certain documents on other grounds, including the attorney-client privilege. (See Lloyd's Amended Privilege Log, Dkt. No. 39).

On March 26, 2009, the court held a hearing on plaintiff's motion. There, and pursuant to an oral order by the court, Lloyd's produced for in camera review the documents referenced in its privilege log. At the hearing, defense counsel also represented that no documents responsive to plaintiff's Fed. R. Civ. P. 45 subpoena issued to Rimkus were referenced in the privilege log or corresponding document production to the court. Thereafter, the court entered an order (Dkt. No. 36) requiring that documents responsive to that Rule 45 subpoena also be produced to the court for in camera review, and gave the parties additional time to brief the issue of whether Lloyd's was obligated under the Federal Rules of Civil Procedure to turn over these documents. Lloyd's submitted the requested documents to the court and both parties filed supplemental briefs on the Rimkus issue, making Schwarz's motion ripe for decision.

## II. Privilege Log Documents

### A. Work Product Protection

Generally, parties may obtain discovery of any relevant materials. Fed. R. Civ. P. 26(b)(1). One exception to this general rule are materials prepared "in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Such "work product" materials are only discoverable (1) if "they are otherwise discoverable under Rule

3

26(b)(1)," and (2) if the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id.[4]

As the Fourth Circuit has explained, "the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity." National Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co., Inc, 967 F.2d 980, 984 (4th Cir. 1992) (quotation omitted). Rather, the document:

> must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

Id. (emphasis in original) (citations omitted). With respect to work product claims by insurance companies, "[t]he nature of the insurance business requires an investigation prior to the determination of the insured's claim." State Farm Fire and Casualty Co. v. Perrigan, 102 F.R.D. 235, 237 (W.D. Va. 1984). Thus, there is no bright-line test for when work product protection applies for insurance companies, and instead courts must undertake a case-by-case analysis. Id. at 238. "This approach realistically recognizes that at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation." Id. The "pivotal

---

[4] If a "court orders discovery of [work product] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such "opinion work product . . . enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." In re Grand Jury Proceedings, Thurs. Special Grand Jury, 33 F.3d 342, 348 (4th Cir. 1994).

4

point" is when the probability of litigation becomes "substantial and imminent," or stated otherwise, when litigation becomes "fairly foreseeable." Id.

In this case, Lloyd's contends that work product protection attached on December 5, 2005, when it "learned that the sprinkler system in [Schwarz's Alta Vista] property was not operational at the time of the fire." (Mar. 16, 2009 Opp. Br. at 6, Dkt. No. 26). According to Lloyd's, this information–coupled with the insurance policy's Protective Safeguards Endorsement and the fact that Schwarz's claim was substantial (for the insurance policy's maximum limit of $1 million)–caused the prospect of litigation to become "substantial and imminent." (Id.). Lloyd's argues that its position regarding December 5, 2007's significance is buttressed by the assignment of counsel to the claim two days later, as well as the Reservation of Rights letter issued to Schwarz on January 12, 2006.[5] (Id.). As for why Lloyd's waited nearly two years until it disclaimed coverage, Lloyd's asserts that the delay was simply because it (as well as Schwarz) was "awaiting receipt of the [Campbell County] Fire Marshall's Report" before officially closing its investigation. (Id. at 7).

For its part, Schwarz argues that work product protection did not apply until October 2, 2007, the date Lloyd's officially disclaimed coverage. Up until that time, Schwarz contends that Lloyd's continually assured it that the investigation was ongoing, and that Lloyd's had not yet determined the status of Schwarz's claim. (See Feb. 27, 2009 Mem. in Sup. of Mot. to Cmpl. at

---

[5] While "not disclaiming coverage at this time," in this letter Lloyd's reserved its "rights to disclaim coverage or take any other action as may be appropriate with regard to this claim." (Ex. C to Mar. 16, 2009 Opp. Br.). Lloyd's also stated that it would "continue to investigate this matter," but "[i]n light of the serious questions regarding insurance coverage," advised plaintiffs that they "may wish to retain personal counsel." (Id.)

2, Dkt. No. 22).[6]  To that end, Schwarz argues that Lloyd's continued to conduct testing and examination of the sprinklers after December 5, 2007.  (Id. at 3).  In addition, Lloyd's utilized pre-suit investigation procedures to repeatedly question Schwarz's employees (including four examinations under oath) through mid-2006, and also to obtain over 5,000 documents from Schwarz. (Reply Br. at 3, 5, Dkt. No. 27).

After a thorough review of the facts of this case, as well as the applicable legal standards, the court finds that the date that work product protection attached is October 2, 2007, the date that Lloyd's disclaimed coverage.  As Lloyd's own actions indicate, and the court's in camera review of the privilege log documents confirms, Lloyd's was continuing to investigate the claim until it denied coverage.  Only after Lloyd's denied coverage could the prospect of litigation be said to be "substantial and imminent," or "fairly foreseeable."[7]

Although the date an insurance company denies coverage does not constitute a "bright-line," only after which work product protection can apply, this does not mean that the denial of coverage date cannot constitute the "pivotal point" when "an insurance company shifts its activity from the ordinary course of business to anticipation of litigation."  Perrigan, 102 F.R.D. at 238.   Illustrative of this principle was this court's decision in Front Royal Ins. Co. v. Gold Players, Inc., 187 F.R.D. 252 (W.D. Va. 1999).   In Front Royal, as in the case at bar, "[w]hile there was a distinct possibility that [the insurance] claim would be litigated from the outset . . .

---

[6] In the October 2, 2007 letter, Lloyd's stated that it had only "recently completed its investigation regarding the loss."  (Ex. B to Mar. 16, 2009 Opp. Br.).

[7] All parties agree that the sprinkler system was not operational at the time of the fire.  Though this fact is salient, it alone is not dispositive of the ultimate legal questions presented in this case.   As argued by plaintiff's counsel during the hearing on this matter, the Protective Safeguards Endorsement contains many provisions and conditions.  Thus, it is reasonable that even after learning that the sprinkler system was not operational, it was necessary for Lloyd's to continue its factual investigation before deciding whether to deny coverage.

6

[that] possibility was not 'substantial and imminent' until [the insurance carrier] decided it was not going to pay this claim and notified [the insured]." 187 F.R.D. at 257.[8] See also Perrigan, 102 F.R.D. at 239 (determining that an insurance investigative report was discoverable, in part, because when it was created, the insurer "was in the process of adjusting the claim . . . . [and] had not decided whether to pay the loss").

At the hearing, Lloyd's also argued that if the court rejected its December 5, 2007 date, then work product protection should apply on one of the following alternative dates: (1) December 7, 2005 (date that counsel was assigned to the claim); (2) January 12, 2006 (date of the Reservation of Rights letter); (3) January 19, 2006 (date that Schwarz advised Lloyd's that it had retained private counsel); and (4) April 3, 2007 (date of a letter from Schwarz's current counsel). In addition to the grounds previously stated, the court finds these dates unavailing for the following reasons. First, the court finds that Lloyd's counsel's mere assignment to the claim cannot constitute the "pivotal point" because investigation into the merits of the insurance claim continued until Lloyd's denied coverage on October 2, 2007. Second, although Lloyd's reserved its rights in the January 12, 2006 letter, it also affirmed in that same letter that its investigation was ongoing. (See supra note 5). Third, the one-sentence January 19, 2006 letter from

---

[8] The court also notes the similarity between Front Royal and this case in another respect: In Front Royal, because the insurer:

> had not formally declared its intent not to pay the claim while simultaneously alleging a threat of litigation, the Court was forced to ask "why did the [insurer] wait fourteen months to file this action seeking a declaratory judgment?" Similarly, one has to ask why Lloyd's, if it indeed "knew the sprinkler system was not operational at the time of the loss, and that the Policy required the sprinkler system to be maintained," on December 5, 2005, waited nearly two years to disclaim coverage?

(Reply Br. at 5 (citations omitted)).

7

Schwarz's family counsel was in direct response to Lloyd's suggestion in the Reservation of Rights letter that Schwarz "may wish to retain personal counsel." (See Exs. C & D to Mar. 16, 2009 Opp. Br.). Thus, this letter can hardly be said to be the point when the prospect of litigation became substantial and imminent. Finally, the relevant portion of the April 3, 2007 letter merely expressed Schwarz's reasonable concern about Lloyd's delay in deciding the coverage question. (See Ex. E to Mar. 16, 2009 Opp. Br.). Though Schwarz wrote that because of the Lloyd's delay, it "must consider litigation to enforce its rights," such a statement does not increase the probability of litigation.[9] At that time, the ball remained fully in Lloyd's court as to whether litigation was likely to ensue, as Lloyd's was still actively conducting its investigation.[10]

For the stated reasons, the court finds that the date that litigation became "substantial and imminent" and "fairly foreseeable" was October 2, 2007, the date that Lloyd's officially disclaimed coverage. Therefore, for all documents created prior to October 2, 2007, work product protection is not a valid ground upon which Lloyd's may withhold any documents.

---

[9] The primary purpose of the April 3, 2007 letter was to give Lloyd's a status update on Schwarz's separate mediation with the person responsible for the November 11, 2005 fire, and it was in direct response to two March 2007 letters from defense counsel asserting Lloyd's "desire to preserve its subrogation rights related to this loss." (Ex. A to Feb. 27, 2009 Mem. In Sup. of Mot. to Cmpl.). That Lloyd's expressed concerned about its subrogation rights (which would only exist if Lloyd's paid the insurance coverage) supports the court's finding that Lloyd's investigation was ongoing and undetermined until it actually denied coverage.

[10] Though not necessary to its determination, the court also finds that even if work product protection applied to documents created before October 2, 2007, Schwarz would still be entitled to them because of "substantial need." Fed. R. Civ. P. 26(b)(3)(A)(ii). Schwarz seeks discovery as to when and why Lloyd's decided to disclaim coverage, which is relevant to Schwarz's claims for declaratory judgment, breach of contract, and bad faith. That Schwarz will have the opportunity to depose employees of Lloyd's as well as Lloyd's agents (see supra note 3) does not mean that Schwarz will be able to obtain the "substantial equivalent [to the documents] by other means." Id. To the contrary, these documents will be critical for noticing, preparing for, and guiding any such depositions.

8

## B. Attorney-Client Privilege

In this diversity case, the court will apply Virginia state law to resolve attorney-client privilege issues. See, e.g., In re Powerhouse Licensing, LLC, 441 F.3d 467, 472 (6th Cir. 2006) ("In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims.") (citations omitted). In Virginia, "[c]onfidential communications between attorney and client made because of that relationship and concerning the subject matter of the attorney's employment 'are privileged from disclosure, even for the purpose of administering justice.'" Commonwealth of Virginia, et rel., etc. v. Edwards, 235 Va. 499, 508-09, 370 S.E.2d 296, 301 (1988) (quotations omitted). The attorney-client "privilege attaches to communications of the client made to the attorney's agents . . . when such agent's services are indispensable to the attorney's effective representation of the client." Edwards, 235 Va. at 509, 370 S.E.2d at 301 (citations omitted). At the same time, "the privilege is an exception to the general duty to disclose, is an obstacle to investigation of the truth, and should be strictly construed." Id. (citation omitted). For example, "[t]he attorney-client privilege does not attach to a document merely because a client delivers it to his attorney. However, the privilege does attach to a document prepared with the purpose of being sent to counsel for legal advice." Virginia Elec. & Power Co. v. Westmoreland-LG & E Partners, 259 Va. 319, 325, 526 S.E.2d 750, 755 (2000) (citation omitted). The burden is on the proponent "to establish that the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived." Edwards, 235 Va. at 509, 370 S.E.2d at 301 (citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).

9

Though not binding precedent on the attorney-client privilege issue, the court finds instructive In re Allen, 106 F.3d 582 (4th Cir. 1997). There, the Fourth Circuit observed that "not all communications between an attorney and client during attorney-conducted investigations constitute legal work entitled to attorney-client privilege. For example, no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer." Id. at 602 (citations omitted). However, if the "investigation was 'related to the rendition of legal services.' . . . then '[t]he privilege is not waived.'" Id. at 603 (quotations omitted).

The court has conducted a thorough in camera review of the documents referenced in Lloyd' privilege log. Applying the foregoing legal principles, the court finds that while some documents for which Lloyd's asserts the attorney-client privilege are not appropriately withheld (consisting largely of communications between members of Lloyd's and/or its agents that merely mention an attorney), the following documents may be withheld on the basis of the attorney-client privilege: Amended Privilege Log Document Nos. 2-5, 7, 9-17, 19-23, 25, 31-34, 36-37, 41, 44-45, 49, 51, 58-59, 62-63, 73, 76, 79, 81-85, 87-89, 91-92, 95-97, 103-04, 109, and 116-18. However, the following Bates No. ranges represent the attachment of non-privileged documents within in a single Amended Privilege Log No. entry, and may not be withheld: Bates Nos. 109-10, 146-191, 201-202, and 215.

To the extent that some documents referenced in the privilege log were also withheld on the basis of "proprietary information," the court will overrule that objection as review of these documents provides no discernible basis or reasonable justification for withholding relevant discovery. In addition, the court overrules Lloyd's objection that Amended Privilege Log

10

Document No. 110 is "beyond the scope of discovery for expert witness." (See infra Part III).[11]

However, the court will allow Lloyd's to produce documents subject to a protective order

consented to by the parties and approved by the court.

### III. Rimkus Documents

Rimkus was retained by Lloyd's on December 16, 2005 to investigate the fire at the Alta

Vista property. (See Apr. 1, 2009 Opp. Br. at 3, Dkt. No. 34). Timothy R. McGreal is employed

by Rimkus, and will be a testifying expert for Lloyd's. (Mar. 16, 2009 Opp. Br. at 2). According

to Lloyd's, McGreal has prepared three expert reports (dated February 27, 2006, August 2, 2007,

and December 19, 2008) which have previously been provided to Schwarz. (Apr. 1, 2009 Opp.

Br. at 2). On December 16, 2008, Schwarz served a Fed. R. Civ. P. 45 subpoena to McGreal that

essentially requested a copy of the Rimkus file from November 2005 to October 1, 2007 (the day

before Lloyd's disclaimed coverage), including but not limited to draft reports and

communications with defense counsel. (Ex. A to Apr. 1, 2009 Opp. Br.). Rimkus objected, in

part, that this subpoena "impose[s] requirements further than those mandated by the Federal Rules

of Civil Procedure and outside the scope of permissible discovery." (Ex. C. to Apr. 1, 2009 Opp.

Br.). Other than photographs within the Rimkus file and a one page weather report, Rimkus did

not produce any documents in response to the subpoena. (Apr. 1, 2009 Opp. Br. at 2).

Lloyd's argues that it properly identified McGreal as its testifying expert, pursuant to Fed.

R. Civ. P. 26(a)(2), and has already produced the expert reports that must accompany such an

expert disclosure. (Id. at 3-4). Lloyd's contends that Fed. R. Civ. P. 26(a)(2)–in conjunction with

---

[11] The court also finds that all of the privilege log documents are relevant. See Fed. R. Civ. P. 26(b)(1).

11

Fed. R. Civ. P. 26(b)(4) which pertains to expert depositions[12]–exclusively "govern[s] how a party may seek discovery from an expert who is expected to testify at trial." (Id. at 4). In support, Lloyd's cites Marsh v. Jackson, 141 F.R.D. 431 (W.D. Va. 1992). In Marsh, the court found that "Rule 26 (b)(4) remains a limitation on the right of access by an opposing party to the evidence of experts who have been retained to testify in the case, and that the discovery of the facts and opinions of those experts cannot obtain solely under Rule 45 where, as here, a bare subpoena duces tecum has issued for the experts' files." Id. at 432.[13] According to the Marsh court, Rule 26(b)(4) and Rule 30 (governing depositions generally) "operate as a control, or brake if you will, on the potential runaway use of the subpoena duces tecum to compel the production of the evidence of experts retained by a party to testify at trial." Id. at 433. In addition, Lloyd's states flatly that Schwarz is not entitled to communications between Rimkus and counsel that contain attorney work product.

The court declines to follow the rationale of the out-of-jurisdiction cases cited by Schwarz (see Apr. 1, 2009 Mem. in Sup. of Mot. to Cmpl. at 1-4, Dkt. No. 35), and finds that Marsh and its progeny applies to this dispute. Whether McGreal was initially retained in a non-litigation role, he is unquestionably Lloyd's testifying expert now. Therefore, the Rule 45 subpoena was

---

[12] McGreal has not yet been subpoenaed for a deposition.

[13] The Federal Rules have been amended a number of times since Marsh was decided; therefore the specific provisions cited therein are not necessarily the most operative today. Specifically, "Rule 26 was amended in 1993 . . . to mandate, inter alia, the disclosure of certain information (even when provided by counsel) considered by testifying experts in forming their opinions." Elm Grove Coal Co. v. Director, Office of Workers' Comp. Programs, 480 F.3d 278, 300 (4th Cir. 2007) (citing Fed. R. Civ. P. 26(a)(2)(B)). However, Marsh continues to be good law. See Ambrose v. Southworth Products Corp., Civ. No. 95-0048-H, 1997 U.S. Dist. LEXIS 11901 (W.D. Va. June 24, 1997) (applying Marsh after the 1993 amendments to Rule 26).

12

improperly issued to Rimkus. Nonetheless, the court finds that Schwarz is entitled to Rimkus's relevant case file (including documents created or provided past October 1, 2007).

While expert disclosures are not due until 90 days before trial absent a court order or stipulation, Fed. R. Civ. P. 26(a)(2)(C)(i), Lloyd's acknowledges that it has already disclosed expert witness McGreal. (Apr. 1, 2009 Opp. Br. at 3). And as Lloyd's argues, Rule 26(a)(2)(B) specifies what information must accompany the disclosure of a expert witness. As the court is aware of no stipulation or court order that modifies the expert disclosure requirements, Rule 26's own provisions control. Thus, <u>all</u> the information required by Rule 26(a)(2)(B) must be disclosed at the time Lloyd's chose to disclose expert McGreal, including "the data or other information <u>considered</u> by [McGreal] in forming [his opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii) (emphasis added). Therefore, the court finds that the time for such fulsome disclosure has already past.

Contrary to Lloyd's assertion, the "data or other information considered" requirement is quite broad, encompassing even attorney opinion work product provided to a testifying expert. In <u>Elm Grove Coal Co. v. Director, Office of Workers' Comp. Programs</u>,[14] the Fourth Circuit squarely held that in light of the 1993 amendments to Rule 26 (<u>see</u> <u>supra</u> note 13), "draft expert reports prepared by counsel and provided to testifying experts, and <u>attorney-expert communications</u> that explain the lawyer's concept of the underlying facts, or his view of the opinions expected from such experts, are <u>not</u> entitled to protection under the work product doctrine." 480 F.3d 278, 303 (4th Cir. 2007) (emphasis added).[15]

---

[14] Though <u>Elm Grove Coal</u> was an administrative case, the relevant Fourth Circuit analysis "assess[ed] the relevant case law on the analogous work product protections of Rule 26." 480 F.3d at 300 n. 22 (citations omitted).

[15] The case that Lloyd's solely relies upon for this issue–<u>Lamonds v. General Motors Corp.</u>, 180 F.R.D. 302 (W.D. Va. 1998)–actually supports the court's conclusion. Recognizing first that the Fourth Circuit had not yet construed the relevant provisions of Rule 26 since the 1993 amendments, the court in <u>Lamonds</u> then commented that

For these reasons, the court will **DENY** Schwarz's motion to compel Rimkus's case file, but finds that pursuant to Rule 26(a)(2)(B)(ii), Schwarz is entitled to any "data or other information that was considered" by McGreal in forming his opinions, including attorney-expert communications, and information provided both before and after October 1, 2007.

## IV. Conclusion

For the stated reasons, the court finds that plaintiffs' motion to compel (Dkt. No. 21) must be **GRANTED** in part and **DENIED** in part. An appropriate order shall issue this day. In general, the court will **GRANT** plaintiffs' motion, and **ORDER** defendant to produce full and complete responses to plaintiffs' requests by April 30, 2009, subject to the following:

1. Work-product protection attached on October 2, 2007. Therefore, prior to that date, Lloyd's may not withhold responsive documents on that basis to (1) Schwarz's request for production of documents to Lloyd's, and (2) Schwarz's subpoenas to Gresham, Crawford, and Clayton's.

---

when "an attorney provides work product material to one of her retained experts to be considered in the formulation of that expert's opinion, the current rules and Advisory Committee's Notes strongly suggest that that information is discoverable." Id. at 305. Next, the court conducted a through analysis to prove this conclusion. Id. at 305-06. In the process, the court noted that

> it is the lawyer who retained the expert who makes the decision to provide that expert with material that would, under different circumstances, be protected by the work product doctrine. This means that the work product can remain protected so long as it is not given to the expert to consider in the development of his opinions. An attorney wishing to maintain the protection afforded by the work product doctrine can choose to provide the expert with all relevant facts instead of directing the expert's attention to certain facts and instead of including opinions and conclusions drawn by the attorney.

Id. at 306. The court also determined that to "consider" a piece of information does not require an expert to have "relied" upon it. Id. Instead, the documents in question were discoverable pursuant to Rule 26(a)(2)(B)(ii) merely because the experts in question had received and read them. Id.

14

2. The attorney-client privilege is an appropriate basis for Lloyd's to withhold the following Amended Privilege Log Document Nos.: 2-5, 7, 9-17, 19-23, 25, 31-34, 36-37, 41, 44-45, 49, 51, 58-59, 62-63, 73, 76, 79, 81-85, 87-89, 91-92, 95-97, 103-04, 109, and 116-18. However, the following Bates No. ranges represent the attachment of non-privileged documents within a single Amended Privilege Log No. entry, and may not be withheld: Bates Nos. 109-10, 146-191, 201-202, and 215.

3. Lloyd's may not withhold any documents referenced on its privilege log on the basis of "proprietary information." Similarly, the court overrules Lloyd's objection that Amended Privilege Log Document No. 110 is "beyond the scope of discovery for expert witness." However, the court will allow the parties until April 28, 2009 to consent to a protective order and submit it for the court's approval.

4. The court will **DENY** Schwarz's motion to compel responses to its subpoena issued to Rimkus. However, the court will **ORDER** production of any "data or other information that was considered" by McGreal in forming his opinions, including attorney-expert communications, and information provided both before and after October 1, 2007.

In addition, the court finds that both plaintiffs' motion to compel and defendant's withholding of documents and opposition to plaintiffs' motion were substantially justified and made in good faith. Therefore, the court will **DENY** plaintiffs' request for attorneys' fees and costs incurred in making its motion, finding that both parties shall bear their own costs and fees. See Fed. R. Civ. P. 37(a)(5)(C).

15

The Clerk of the Court is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

Enter this 16 day of April, 2009.

Michael F. Urbanski
United States Magistrate Judge

16