# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| SCHWARZ & SCHWARZ OF VIRGINIA, LLC, AND SCHWARZ & SCHWARZ, LLC,<br>*Plaintiffs,*<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON WHO SUBSCRIBED TO POLICY NUMBER NC959,<br><br>*Defendant.* | CASE NO. 6:07-cv-00042<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon the Motion to Retax Costs, filed by Plaintiffs, Schwarz & Schwarz of Virginia, L.L.C., and Schwarz & Schwarz L.L.C. (hereinafter "Schwarz"), filed January 19, 2010 (docket no. 123), and Defendant's, Certain Underwriters at Lloyd's, London Who Subscribed to Policy Number NC959 (hereinafter "Underwriters") Brief in Opposition to Schwarz's Motion to Retax Costs, filed January 26, 2010 (docket no. 125). For the following reasons, Schwarz's Motion to Retax Costs will be GRANTED in part and DENIED in part, in a separate Order to follow.

By Memorandum Opinion and Order, dated December 29, 2009 (docket nos. 119 and 120), this Court adopted the Report and Recommendation of the United States Magistrate Judge in its entirety, granting Underwriters' Motion for Summary Judgment and denying Underwriters' Motion for Leave to Amend Counterclaim. On January 8, 2010, Underwriters filed a Bill of Costs totaling $13,814.85 (docket no. 121), and the following business day, January 11, 2010, the Clerk of Court

taxed the costs against Schwarz in full (docket no. 122). Schwarz has lodged certain objections thereto, in the instant Motion to Retax Costs.

## APPLICABLE LAW

Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." This rule "creates a presumption that costs are to be awarded to the prevailing party," which in this case is Underwriters. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003); *see also Virginia Panel Corp. v. MAC Panel Co.*, 203 F.R.D. 236, 237 (W.D. Va. 2001). As a result of this presumption in favor of awarding costs, the Court "may not depart from the 'normal practice' of awarding fees to the prevailing party without first articulating some good reason for doing so." *Oak Hall Cap and Gown Co., Inc. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990).

Without express statutory or contractual authority for the taxation of additional litigation expenses as costs, the Court may only tax as costs those items specifically set forth in 28 U.S.C. § 1920 (2008). *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494 (1987); *Harold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988). However, for those expenses specifically identified as costs pursuant to 28 U.S.C. § 1920,[1] the Court has discretion in determining and awarding such costs. *See e.g.*, *Oak Hall Cap and Gown Co.*, 899 F.2d at 296 (noting that "the award of costs to the prevailing party is a matter firmly in the discretion of the trial court"); *Flint v.*

---
[1] Under 28 U.S.C. § 1920, a trial court may tax as costs the following:
"(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of

*Hayes*, 651 F.2d 970, 973 (4th Cir. 1981) (noting that "the taxation of costs is a matter left to the sound discretion of the district court"); *see also Scallet v. Rosenblum*, 176 F.R.D. 522, 524-25 (W.D. Va. 1997).

With this standard in mind, the Court turns to the arguments set forth by Schwarz in support of its Motion to Retax Costs.

### DISCUSSION

#### A. EQUITABLE CONSIDERATIONS

As a preliminary matter, Schwarz argues that allowing the recovery of costs "would be inequitable under the circumstances." In particular, Schwarz cites the haste with which the Clerk of Court taxed costs, as Underwriters filed a Bill of Costs in the amount of $13,814.85 on Friday, January 8, 2010 (docket no. 121), and on the next business day, January 11, 2010, the Clerk of Court taxed costs in their entirety against Schwarz (docket no. 122). This was, according to Schwarz, "premature and improper because Schwarz was not afforded any opportunity to prepare or present their response." *See* Schwarz's Memorandum in Support of Motion to Retax Costs, at 1 n.1 (hereinafter "Schwarz's Memorandum in Support").

Schwarz correctly notes that Rule 54(d)(1) has been amended, effective December 1, 2009, to provide that "[t]he clerk may tax costs on 14 days' notice," as opposed to its former provision that the clerk could tax costs on 1 days' notice. *See* Fed. R. Civ. P. 54, Advisory Committee's Note (2009 Amendments). However, any error committed by the Clerk of Court in this respect is harmless, because Schwarz has timely filed its Motion to Retax Costs, and the Court reviews *de novo* the Clerk's taxation of costs. *See e.g., In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 461 (3d Cir. 2000) ("Under the well-established Rule 54(d)(1) case law, the district court is charged with

---

special interpretation services under section 1828 of this title."

making a *de novo* review of the clerk's determination of the costs issue."); *Cofield v. Crumpler*, 179 F.R.D. 510, 514 (E.D. Va. 1990) (same); *see also* 10 Moore's Federal Practice § 54.100[3], at 54-145.

Furthermore, Schwarz argues that financial considerations should tip the balance of equities in its favor. There is no dispute that Schwarz suffered a $4.6 million fire loss, and "Schwarz now bears the crushing financial burden of rehabilitating its property and paying for the costs associated with that rehabilitation." Schwarz's Memorandum in Support, at 8. Undoubtedly, the vast damage caused to Schwarz's property by the fire on November 11, 2005, has been, and will continue to be, a great financial burden upon the company. As the non-prevailing party, the inability of Schwarz to pay may serve to excuse the taxation of costs. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 447 (4th Cir. 1999) (acknowledging costs may be denied if non-prevailing party is of sufficiently modest means); *see also U.S. Bank Trust Nat'l Ass'n v. Venice MD LLC*, 92 F. App'x 948, 956 (4th Cir. 2004) (acknowledging "the losing party's inability to pay" as a good reason justifying the denial of costs); *Moore v. Southtrust Corp.*, 392 F.Supp.2d 724, 731 (E.D. Va. 2005) (same). However, in the Court's inquiry into the taxation of costs, Schwarz's assertion misses the mark. The pertinent question is not whether the non-prevailing party suffered an economic hardship as a consequence of the outcome of the litigation, but whether the non-prevailing party was "of such modest means that it would be unjust or inequitable to enforce Rule 54(d)(1)." *Cherry*, 186 F.3d at 447. Schwarz has not provided to the Court any documentation concerning its inability to pay the costs delineated in Underwriters' Bill of Costs. Nor has Schwarz even asserted that it would be difficult or impossible to pay such costs. Under these circumstances, Schwarz has made an insufficient showing on its inability to pay to overcome the presumption that costs are to be awarded to the prevailing party. *See Wyne v. Medo Indus., Inc.*, 329 F.Supp.2d 584, 588 (D. Md. 2004).

## B. SPECIFIC ITEMS IN THE BILL OF COSTS

### 1. Service Fees of Subpoenas

Underwriters seek to recover $910.50 in fees for the service of process of eighteen subpoenas, using private process servers, and the accompanying mileage charges. Schwarz alleges that "[t]his was clearly overkill" by Underwriters and further objects to the service of these subpoenas on the basis that they "all ... related to the fraud and other tort and statutory claims and theories which were not even a part of this litigation," when in reality, "the material facts were undisputed and the case turned on the reasonableness and practicality of Schwarz's interpretation of the Protective Safeguards Endorsement to the Policy under these facts." Schwarz's Memorandum in Support, at 4. In response, Underwriters argue that all of the aforementioned subpoenas were necessary to this litigation. First, Underwriters argue that subpoenas to the fire departments were "absolutely necessary," because "[c]entral to this litigation was the condition of the sprinkler system on the night of the fire and the weeks preceding the fire," and as "[t]he firefighters were at the scene first," they "were independent witnesses regarding what had to be done to turn the sprinkler on." Underwriters' Memorandum in Opposition to Motion to Retax Costs, at 2-3 (hereinafter "Underwriters' Opposition"). Second, the subpoena served on the Cranford Agency, which was the broker used by Schwarz to procure the Policy in question, was necessary too as a result of "[t]he information Schwarz provided to The Cranford Agency about the condition of the sprinkler system before and after the loss." *Id.* at 3. Finally, Underwriters argue that the other subpoenas were issued to sprinkler companies, identified by Schwarz, as those which might have completed inspections of the sprinkler system prior to the fire. *Id.* at 3.

Although the issue was not raised by Schwarz, a preliminary question before the Court is whether it has the power to tax private process server fees as costs under 28 U.S.C. § 1920. This

statute expressly provides, in pertinent part, that taxable as costs are "[f]ees of the clerk and marshal." 28 U.S.C. § 1920(1) (2008). While there is a split in the courts as to whether fees for private process servers fall under that provision, a clear majority of circuit courts recognize private process server fees are also taxable against the non-prevailing party. *Compare Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 203 (6th Cir. 2002) (holding that "a district court may tax costs for private process server fees to the extent that these private process server fees do not exceed the United States Marshal's fees"); *E.E.O.C. v. W&O Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) (holding that "private process server fees may be taxed pursuant to §§ 1920(1) and 1921"); *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996) (holding that the court will "resolve the ambiguity of § 1920 in favor of permitting the prevailing party to recover service costs that do not exceed the marshal's fees, no matter who actually effected service"); *United States for the Use and Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (holding that it is within the district court's discretion to award private process server fees); *Aflex Corp. v. Underwriters Labs.*, 914 F.2d 175, 178 (9th Cir. 1990) (permitting taxation of private process server fees upon different reasoning), *with Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985) (holding that Section 1920 contains no provision for the taxation of expenses of a special process server). The Fourth Circuit has not yet addressed this ambiguity in Section 1920(1), and indeed, courts within the Western District of Virginia have reached different outcomes on this question. *Compare Kennedy v. Joy Techs., Inc.*, 484 F.Supp.2d 502, 504 (W.D. Va. 2007) (holding that "[i]n the absence of any direction from the Fourth Circuit, I will follow the majority view and allow taxation of costs for private process servers"); *Southprint, Inc. v. H3, Inc.*, No. 4:02-cv-00038, 2005 WL 3177627, at *3 (W.D. Va. Nov. 23, 2005), *with Kelley v. Little Charlie's Auto Sales*, No. 4:04-cv-00083, 2006 WL 2456355, at *2-3 (W.D. Va. Aug. 22, 2006). The Court finds persuasive

the reading of Section 1920(1) articulated by the majority of circuit courts, and therefore will allow the taxation of fees of private process servers to the extant that such fees do not exceed the United States Marshal's fees.

In spite of Schwarz's contention that service of subpoenas upon the 18 separate entities was "clearly overkill" on the part of Underwriters, Schwarz has not overcome the presumption with respect to the service fees that costs will be awarded to the prevailing party. While Schwarz is correct that the Court found the material facts to be undisputed, the condition of the sprinkler system on the night of the fire and in the weeks preceding the fire was central to the litigation, and was treated as such by Underwriters in their dispositive motions. *See e.g.*, Underwriters' Memorandum in Support of Motion for Summary Judgment, at 16-17 (docket no. 71) (arguing that the "pleadings and discovery make clear" sprinkler system was not in "complete working order" as required by the Policy because, in part, "for at least fourteen days before the fire, the sprinkler system was leaking" and "part of the sprinkler system had been shut off for more than fourteen days before the fire as a result of the leak"). The fire departments were in a unique position, as first responders to the scene of the fire, to provide information on the condition of the sprinkler system. In fact, documents produced in discovery in response to the contested subpoenas were attached to Underwriters' Motion for Summary Judgment in support thereof. *See e.g.*, Ex. 9 (produced by Rustburg Volunteer Fire Department); Ex. 10 (produced by Campbell County Fire Marshal). Therefore, the service fees for the fire departments and related public entities (Campbell County Building Inspector and Campbell county Department of Public Safety) were certainly reasonably necessary for use in this litigation at the time at which they were incurred. Similarly, given the importance to the litigation of the condition of the sprinkler system, service fees upon the three sprinkler companies identified by Schwarz as having potentially completed inspections of the sprinkler system (East Coast Fire

Protection, Inc., Dagenhart Sprinkler Co., and Magic City Sprinkler, Inc.) are also properly taxable. Finally, the fees for service upon Tom and Ann Cranford of The Cranford Agency (the broker used by Schwarz to procure the Policy) are properly taxable given the importance of the statements made by Schwarz in its insurance application and subsequent insurance policy documentation concerning the nature of the sprinkler system.

A response is warranted at this point to Schwarz's global argument that because these subpoenas "related to the fraud and other tort and statutory claims and theories which were not even part of this litigation," their service fees should not be taxed as costs. Schwarz's Memorandum in Support, at 4. While the Court denied Underwriters' Motion for Leave to Amend Counterclaim as untimely and prejudicial, *see* December 29, 2009 Memorandum Opinion, at 6-16 (docket no. 120), the Court also concurred with the Magistrate Judge's conclusion that Underwriters had preserved as a defense in this case their assertions that Schwarz made misrepresentations in its insurance application or fire loss claim. *Id.* at 7 n.2. Therefore, Proposed Counts I through III were unnecessary because Underwriters raised Schwarz's alleged misrepresentations in their Sixteenth Affirmative Defense, and thus, Underwriters were permitted to conduct such discovery on that ground. *See* Fed. R. Civ. P. 26(b)(1) (providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to *any party's* claim or defense") (emphasis added). *Cf. Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F.Supp. 101, 105 (E.D.N.Y. 1996) ("The defendants are entitled to any relevant non-privileged evidence ... to defend against plaintiff's causes ... and to substantiate their asserted affirmative defense ....").

In 2008, the rate of the United States Marshals Service for service of process was $45.00 per hour for each item served, plus travel costs and any other out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3)(2008). Therefore, as service was effectuated upon all parties in 2008, the Court will

award $45.00 for service on each person or company, unless a lower cost was actually incurred, plus travel costs. The only charge potentially in dispute is the $150.00 sought as costs in connection with the service of subpoenas upon Tom and Ann Cranford. This full amount will be permitted because the documentation submitted suggests that five separate subpoenas were served upon different parties in connection therewith. The Court finds that service fees of subpoenas in the amount of $910.50 are taxable to Schwarz.

2. Deposition Transcript Costs

The largest item in the Bill of Costs by far, Underwriters seek to recover $10,468.65 for deposition transcript costs, all of which, Underwriters argue, "were reasonably necessary at the time they were taken." Underwriters' Opposition, at 4. Schwarz argues, in response, that the total of 12 depositions for which costs are sought was "clearly overkill" on the part of Underwriters. The Court will address the specific arguments in turn.

As a general matter, under 28 U.S.C. § 1920(2), the costs of an original deposition taken by the prevailing party are recoverable to the extent that those depositions were "necessarily obtained for use in the case." The Court "should award costs when the taking of a deposition is reasonably necessary at the time of its taking," *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987), and the material from the deposition "need not be used at trial, but need only be 'relevant and material' for the preparation in the litigation." *Scallet*, 176 F.R.D. at 526 (citing *Jop v. City of Hampton, Virginia*, 163 F.R.D. 486, 488 (E.D. Va. 1995); *Board of Water's Edge v. Anden Group*, 135 F.R.D. 129, 132-34 (E.D. Va. 1991)).

The first item in the list of deposition transcript costs is $517.75 sought by Underwriters for the second deposition of Property Manager Sean Pillow (the Schwarz employee responsible for the sprinkler system). In light of the Court's Memorandum Opinion and Order dated July 1, 2009

(docket no. 59), which provided that "Underwriters shall pay for the cost of the [second] deposition, including Pillow's reasonable travel expenses and compensation for time missed from work, as well as Schwarz's counsel's fees to defend the deposition," the Court will deny Underwriters' attempt to tax these expenses as costs.

Second, Schwarz objects to the $2,779.00 in expenses incurred in connection with the depositions of Altavista Fire Chief John E. Tucker, Altavista firefighters Thomas Lee Neal, Jr., and Stearly Haywood Belvin, Jr., Rustburg firefighter Steven Daniel Isaacs and Campbell County Public Safety and Fire Official Rodney Lawson, on the grounds that they "all relate to the above fraud and other tort and statutory claims and theories which the Court did not allow into the litigation." Schwarz's Memorandum in Support, at 5.

Contrary to Schwarz's assertion, the depositions of the five firefighters do not relate only to the fraud, tort, and other statutory theories that Underwriters sought to include in their Proposed Amended Counterclaim. For the same reasons stated above, these depositions were certainly reasonably necessary at the time they were taken to assist in ascertaining the progression and suppression of the fire, and the state of the sprinkler system in the weeks preceding, and the night of, the fire. Furthermore, even though the Court denied Underwriters' Motion for Leave to Amend, Underwriters would have been permitted to conduct discovery concerning Schwarz's alleged misrepresentations in its insurance application and claim form as a result of Underwriters' Sixteenth Affirmative Defense. Therefore, the Court finds taxable $2,779.00 in deposition transcript costs as a result of the aforementioned depositions.

Third, Schwarz objects to the taxation of costs from the depositions of Tim Schwarz (the principal of Plaintiff Schwarz & Schwarz) for whom $1,602.00 is sought, and Franklin Staley (the party responsible for scheduling inspections of the sprinkler system) for whom $1,576.25 is sought.

Schwarz argues that such costs should be disallowed, or reduced, because (1) these depositions "had no bearing on the Court's ruling," and (2) while it was "readily apparent from the outset that neither Tim Schwarz nor Frankie Staley were present on the property at the time of the fire or during the days leading up to the fire," Underwriters "insisted on spending full 8 hour plus days deposing each of them on a variety of inconsequential matters." Schwarz's Memorandum in Support, at 5. In response, Underwriters argue that the deposition of Tim Schwarz was "undeniably crucial," because he "is the individual with ultimate decision making authority over how the property was maintained, whether repairs were made and by whom, and whether the property was insured and for how much." Underwriters' Opposition, at 5. Furthermore, Underwriters argue that his deposition was necessary because Tim Schwarz "was the person to whom Pillow and Staley reported about problems with the sprinkler system and the need for repairs." *Id*. With respect to the Staley deposition, Underwriters argue that because he was the person responsible for scheduling inspections and repairs of the sprinkler system, and because Sean Pillow "reported problems with the sprinkler system directly to Staley (and sometimes to Tim Schwarz, too)," the Staley deposition was "undeniably crucial in this litigation." *Id*.

The Court finds persuasive Underwriters' arguments concerning the importance of the depositions of Tim Schwarz and Franklin Staley to this litigation. As a preliminary matter, courts have held that when depositions "were not used at trial or to support a preliminary or dispositive motion, those costs are not recoverable." *Southprint*, 2005 WL 3177627, at *3. Schwarz alleges that these depositions "had no bearing on the Court's ruling," Schwarz's Memorandum in Support, at 5, however, the "Fourth Circuit has not made the use of a transcript in a dispositive motion the test of whether the costs are taxable." *Ferris v. AAF-McQuay, Inc.*, No. 5:06-cv-00082, 2008 WL 495656, at *1 (W.D. Va. Feb. 21, 2008). The Court notes that the depositions of both Tim Schwarz and

Franklin Staley were attached to Underwriters' Objections to the Report & Recommendation, and were heavily relied upon therein. *See* Underwriters' Objections to the Report & Recommendation, at 10, 12, 14, 18, 19, & Ex. G, Ex. I (docket no. 110). While Underwriters used such depositions in an attempt to bolster their arguments that the Court should grant their Motion for Leave to Amend Counterclaim, as stated previously, Underwriters would have been permitted to conduct discovery concerning Schwarz's alleged misrepresentations in its insurance application and claim form as a result of Underwriters' Sixteenth Affirmative Defense. Furthermore, it was not necessary for Tim Schwarz or Franklin Staley to have been physically "present on the property at the time of the fire or during the days leading up to the fire," as Schwarz suggests, in order for their depositions to have been reasonably necessary at the time they were taken. Indeed, given the fact that (1) Tim Schwarz was the principal of Plaintiff Schwarz & Schwarz; (2) Franklin Staley was the Schwarz employee responsible for scheduling inspections of the sprinkler system; (3) Property Manager Sean Pillow communicated with both Tim Schwarz and Franklin Staley concerning the state of the sprinkler system, *see e.g.*, Underwriters' Memorandum in Support of Motion for Summary Judgment, at 5-6, & Ex. 6, Ex. 7 (docket no. 71); and (4) Underwriters relied upon such documentation in support of their dispositive motions, *id.*, it appears to the Court that these deposition expenses were "reasonably necessary for preparation for trial at the time they were taken," *LaVay*, 830 F.2d at 528, and that such expenses were "necessary to counsel's effective performance and proper handling of the case." *Scallet*, 176 F.R.D. at 526. Therefore, Schwarz's arguments to the contrary have not rebutted the Underwriters' assertions that their deposition expenses were "necessary," and as such, the Court finds taxable $3,178.25 in deposition transcript costs as a result of the depositions of Tim Schwarz and Franklin Staley.

Fourth, Schwarz objects to the taxation of $747.15 in costs from the depositions of Ann and Tom Cranford, on the basis that they "had no bearing on the Court's ruling." Schwarz's Memorandum in Support, at 5. As stated previously, the fact that the deposition was not used in connection with a dispositive motion does not automatically disallow costs, however, where the prevailing party has not shown the material from the deposition to have been used for anything, the Court certainly can disallow costs. *See e.g., Scallet*, 176 F.R.D. at 528. As the insurance application and loss claim submitted by Schwarz to The Cranford Agency form much of the underlying basis for this litigation, the Court previously taxed costs in the amount of $150.00 in connection with the service of subpoenas upon Ann and Tom Cranford. However, in the portion of Underwriters' brief concerning "Depositions/Witness Fees," there is no argument made at all concerning the Cranford depositions. Underwriters' Opposition, at 4 – 6. In the portion of Underwriters' brief concerning "Subpoenas," there is an argument made that "[t]he information Schwarz provided to The Cranford Agency about the condition of the sprinkler system before and after the loss was also necessary to this litigation." *Id.* at 3. While the Court agrees that the documents produced by The Cranford Agency in response to the subpoenas were necessary to this litigation, as far as the Court can tell – and Underwriters have provided no examples to the contrary – the material from the depositions of Ann and Tom Cranford were not used, referenced, or submitted in connection with any preliminary or dispositive motion. As such, the Court will disallow Underwriters' attempt to tax this $747.15 as costs. *See Southprint*, 2005 WL 3177627, at *3 (holding that "when those depositions were not used at trial or to support a preliminary or dispositive motion, those costs are not recoverable").[2]

---

[2] Furthermore, Underwriters' argument that "[t]he records from The Cranford Agency, and their depositions, were necessary to refute" Schwarz's argument that it "did not know of any way to contact Underwriters" is unavailing. Underwriters' Opposition, at 3. Nor does the statement of the Magistrate Judge support Underwriters' argument that the depositions of Ann and Tom Cranford were necessary. *See* Report & Recommendation, at 14 n.4 (docket no. 103). That statement does not provide a reasonable basis for belief that reference was made to the depositions at all.

Finally, although conceding that the depositions of Sean Pillow and Ken Neff "had some relevance to the final outcome" and thus had "conceivable legitimacy," Schwarz objects to the taxation of $3,246.50 in costs on the basis that they were "too high" and "should be reduced substantially, especially given the fact that Pillow already had provided a sworn statement and had been subjected to examination under oath." Schwarz's Memorandum in Support, at 6. To the contrary, the reasoned determination of the Magistrate Judge was that the complexity of the sprinkler system, to the contrary, required *more* time to depose Sean Pillow:

> After briefing and argument and upon review of the prior testimony and the intricate schematic drawing, the court finds that under the particular facts of this case that a brief extension of the deposition should be allowed. Given the complexity of the sprinkler system, the court credits defendant's assertion that it needs more time to question Pillow regarding his actions concerning the sprinkler system in the weeks leading up to and during the fire. Counsel represented that Pillow was the only fact witness with such knowledge. Counsel for Underwriters explained that the layout and operation of the sprinkler system were complicated and required the expenditure of a great deal of time at the deposition.

July 1, 2009 Memorandum Opinion, at 2-3 (docket no. 59). As the Magistrate Judge concluded that additional time was warranted for the deposition of Sean Pillow given the complexity of the case, the Court finds that the costs on the basis of the admittedly relevant Pillow and Neff depositions were not "too high," even in light of the fact that Pillow had previously been subjected to examination under oath. Therefore the Court finds that $3,246.50 in connection with these deposition expenses is properly taxable to Schwarz.

Consequently, the Court finds a total of $9,203.75 in deposition transcript expenses to be taxable to Schwarz as costs.

### 3. Witness Fees

Underwriters seek to recover $380.60 for witness fees incurred in connection with 6 witnesses,[3] to which Schwarz objects on the grounds that this number was "clearly overkill" on the part of Underwriters. Schwarz's Memorandum in Support, at 6. Furthermore, Schwarz argues that the involvement of all witnesses besides Sean Pillow "relate[ ] only to the above fraud and other tort and statutory claims and theories which the Court did not allow into the litigation," and with respect to Sean Pillow, Schwarz alleges that Underwriters were, pursuant to Order of the Court, "responsible for Schwarz's attorneys' fees, costs and expenses associated with [Pillow's second] deposition." *Id.*

Contrary to Schwarz's assertion, the depositions of the five firefighters do not relate only to the fraud, tort, and other statutory theories that Underwriters sought to include in their Proposed Amended Counterclaim. For the same reasons stated above, these depositions were certainly reasonably necessary at the time they were taken to assist in ascertaining the progression and suppression of the fire, and the state of the sprinkler system in the weeks preceding, and the night of, the fire. Furthermore, even though the Court denied Underwriters' Motion for Leave to Amend, Underwriters would have been permitted to conduct discovery concerning Schwarz's alleged misrepresentations in its insurance application and claim form as a result of Underwriters' Sixteenth Affirmative Defense.

With respect to the $115.00 in witness fees sought in connection with the second deposition for Sean Pillow, Underwriters are correct that generally such items are taxable. Again, in light of the Court's Memorandum Opinion and Order dated July 1, 2009 (docket no. 59), which provided that "Underwriters shall pay for the cost of the [second] deposition, including Pillow's reasonable travel

---

[3] The witnesses for whom such fees were sought were Altavista Fire Chief John E. Tucker, Altavista firefighters Thomas Lee Neal, Jr., and Stearly Haywood Belvin, Jr., Rustburg firefighter Steven Daniel Isaacs, Campbell County Public Safety and Fire Official Rodney Lawson, and Property Manager Sean Pillow.

expenses and compensation for time missed from work, as well as Schwarz's counsel's fees to defend the deposition," the Court will deny Underwriters' attempt to tax these expenses as costs. Therefore, the Court finds that $265.60 is properly taxable to Schwarz as witness fees.

### 4. Copying Costs & Printing Costs

Underwriters seek to recover $1,982.22 for fees incurred for copies and printing which were all "necessarily obtained for this case." Underwriters' Opposition, at 7. Schwarz objects to the inclusion of these expenses as costs on the grounds that it "cannot ascertain the basis for these alleged 'Duplication' charges," believing that Underwriters "may be seeking to charge Schwarz for costs of making courtesy copies and/or exchanging copies between [Underwriters'] local and lead counsel, either of which would be improper." Schwarz's Memorandum in Support, at 7. Underwriters assert, in response, that no part of the copying charges were for copies made to local counsel, and argues in support of its specific delineated charges. Underwriters' Opposition, at 6-7.

The Court may tax as costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). However, Underwriters, as the prevailing party "may only be reimbursed for copies of documents it has submitted to the court and provided to opposing counsel." *Kennedy v. Joy Techs., Inc.*, 484 F.Supp.2d 502, 505 (W.D. Va. 2007) (citing *Southprint*, 2005 WL 3177627, at *4); *see also Wyne v. Medo Indus., Inc.*, 329 F.Supp.2d 584, 590-91 (D. Md. 2004).

Underwriters do not argue that all such delineated copies were either to be submitted to the Court or provided to opposing counsel. Instead, they argue that "[a]ll of the items" in the Bill of Costs "were necessarily obtained for the case," some apparently because they "included information regarding what was being done at the property in the weeks preceding and leading up to the fire,"

and others because "the copying of exhibits produced to the court or opposing counsel are also recoverable." Underwriters' Opposition, at 7.

Of the $1,982.22 sought as costs for copying and printing expenses, on the basis of the documentation provided to the Court, only $646.51 is shown to have been incurred for copies submitted to the Court or opposing counsel.[4] Schwarz further argues, with respect to these remaining expenses, that "[c]ertain of these charges relate to documents that [Underwriters] [were] forced to provide to the Court and/or produce to Schwarz following the Court's Order granting Schwarz's motion to compel and determining that [Underwriters] [were] improperly withholding them on privilege grounds." Schwarz's Memorandum in Support, at 7. In support thereof, Schwarz cites *Tunnell v. Ford Motor Co.*, No. 4:03-cv-00074, 2005 WL 3050316, at *3 (W.D. Va. Nov. 10, 2005), for the proposition that a party may not seek reimbursement for discovery expenses when its "own discovery failures precipitated those expenses." The instant circumstances, however, are a far cry from those at issue in *Tunnel*, wherein the Court stated as follows regarding the discovery failures of the party against which costs were sought:

> As regards Tunnell's motion for attorneys fees and costs associated with Ford's discovery transgressions, the problems encountered by Tunnel due to Ford's failure to produce the Fire Report are amply documented in the multiple Reports and Recommendations and Orders entered in this case on that issue. Ford's argument that this issue was an irrelevant fishing expedition by Tunnell for which he is not entitled to the recovery of fees is plainly wrong. Time and again, the court has made it clear to Ford that this document was relevant to the issues in this case and that it should have been produced during discovery.

---

[4] The following items are thus considered properly taxable as costs:
"7/8/09      Duplication of color Sprinkler Plan for Court         $274.81
3/27/09     Duplication of Rimkus file to Judge Urbanski           $ 86.85
4/8/09      Duplication of Privileged Documents Produced
            To Judge Urbanski                                      $ 83.10 ...
4/28/09     Duplication of Documents to Josh Long, Esquire         $201.75"

*Id.* at *1. Although the Magistrate Judge found Underwriters to have erred by withholding certain documents on privilege grounds and not producing all that which was required under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, *see* April 17, 2009 Memorandum Opinion, at 9-14 (docket no. 41), Underwriters' compliance forthwith stands in contrast to the conduct of the prevailing party in *Tunnell*. *See Tunnell*, 2005 WL 3050316, at *1 ("Regardless of the ultimate result in this case, Ford's discovery conduct was inexcusable."). Therefore, the Court finds Schwarz's argument – that copying expenses should be denied if they related to Underwriters' failed privilege and discovery objections – is without merit, and the Court finds that $646.51 in copying costs are properly taxable to Schwarz.

### 5. Other Costs

Finally, Underwriters seek to recover $72.88 in "other costs," which consist of the costs of FedEx shipments to the Magistrate Judge and the cost for mailing a copy of the Plan to opposing counsel. Such expenses, whether for mailing papers to the Court or opposing counsel, are not properly taxable as costs. *See e.g.*, *Centennial Broad. LLC v. Burns*, No. 6:06-cv-00006, 2007 WL 1839736, at *2 (W.D. Va. June 22, 2007) (disallowing a FedEx charge for forwarding exhibits to the court); *Scallet*, 176 F.R.D. at 527 ("[Postage] is an administrative cost incurred by the attorneys, rather than a cost specifically arising out of the substantive preparation, as is the case with reporter's or marshal's fees. Thus, postage fees are typically not taxable."); *Sun Pub. Co., Inc., et al v. Mecklenburg News, Inc., et al.*, 594 F.Supp. 1512, 1524 (E.D. Va. 1984) ("Costs such as travel expenses, delivery service, secretarial overtime, long-distance phone calls, postage, meals, etc., while properly billable to a client, are not properly taxed as costs by the Court."). Therefore, the Court will deny Underwriters' attempt to tax these expenses as costs to Schwarz.

For the foregoing reasons, a separate Order will be entered reducing the Bill of Costs held

taxable to Schwarz from $13,814.85 to $11,026.36, consisting of $910.50 in subpoena service fees, $9,203.75 in deposition transcript costs, $265.60 in witness fees, and $646.51 in copying and printing costs.

It is so ORDERED.

The Clerk of the Court is hereby directed send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 8th day of February, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE